No. 19,030.

THE STATE OF KANSAS, *Appellee,* v. S. E. ADAMS, *Appellant.*

SYLLABUS BY THE COURT.

TRESPASS — *Throwing Down Fence* — *Driving Across Lands* — *Conviction.* The record in a misdemeanor case examined and held not to require the granting of a new trial.

Appeal from Barton district court; DANIEL A. BANTA, judge. Opinion filed February 7, 1914. Affirmed.

*F. Dumont Smith,* of Hutchinson, *A. C. Banta,* and *Clyde Allphin,* both of Great Bend, for the appellant.

*John S. Dawson,* attorney-general, and *R. C. Russell,* county attorney, for the appellee.

The opinion of the court was delivered by

MASON, J.: S. E. Adams appeals from a conviction under the statute making guilty of a misdemeanor any one who "shall voluntarily throw down or open any bars, gates or fences and leave the same open or down," other than those that lead into his own enclosure, or shall drive across any lands used for agricultural purposes after such gates or fences have been thrown down, and shall damage such lands thereby, without the consent of the owner of such real estate." (Gen. Stat. 1909, § 9693, as amended by Laws 1911, ch. 166.) The conviction was upon two counts, one charging the throwing down of a fence, and the other the driving across lands after the fence had been torn down. The punishment assessed was a fine of ten dollars upon each count.

The complaining witness, E. K. Robinson, is the owner of land on the south bank of the Arkansas river, in Barton county. There is now a considerable tract between the meandered line which originally constituted his north boundary and the present south bank of the river. The defendant maintains that this tract is school land, and that he has acquired rights as a settler upon it, under the statute. His general contention is that the trial court committed error in refusing to allow him to give evidence of his claims in this regard. The state answers this general contention by asserting that the defendant was tried and convicted of an offense with respect to an offense committed wholly within the original boundary lines of the patented land of the complaining witness, and that therefore the nature of the defendant's claims with reference to the tract north of the original meander line were immaterial. This court concludes that the state's position is correct—that any controversy with respect to the land between the old and new banks of the river

is foreign to the case, and that the judgment should be affirmed.

The defendant complains of the refusal of the trial court to allow him to make proof of his settlement. The refusal was based specifically upon the ground that in order to convict it must be found that the fence in question was within the meander lines established by the government survey, and the jury were instructed to that effect. It is argued that the defendant should have been permitted to show the basis of his occupancy, because the jury would naturally be prejudiced against him if it appeared that he was merely a squatter without color of right. We think the trial court was justified in excluding the evidence on the ground that it related to a controversy not involved in the present action.

The defendant testified that in the course of plowing a fire guard he removed parts of a fence. His attorney asked him: "What was your intention in opening it that way?" An objection was made by the state, which the court sustained. It is contended that this ruling prevented the defendant from making his defense, and that he thereby suffered a prejudice, which was intensified by the court's refusal to give an instruction reading as follows: "If the defendant opened the fences in controversy under an honest mistake, believing that the same were on land belonging to the state of Kansas, on which he had settled with the intention of proving up and purchasing the same as school land, he can not be convicted."

The defendant maintains that by these rulings he was prevented from showing that he removed the fence under a justifiable, even if mistaken, belief that it stood upon the land to which he was asserting a claim. If he actually tried to make this defense and was denied the opportunity he has at least plausible ground of complaint. But we think the record as a whole does not disclose that situation. The inquiry as

to the defendant's intention did not affirmatively suggest such a defense. Malice or even willfulness is not an ingredient of the misdemeanor defined by the statute, and in one point of view the defendant's motive was immaterial. It seems probable that the court had this thought in mind, and was desirous also that the issue on trial should not be confused with the controversy as to the title to the new bank of the river. If the purpose of this question was to elicit testimony that the defendant had acted under a mistake as to the location of the meander line, the court should have been so informed. The question did not clearly indicate such an object, and the court can not be regarded as having excluded an inquiry into the matter of mistake as to the boundary. (*Marshall v. Marshall*, 71 Kan. 313, 80 Pac. 629.) No other effort appears to have been made to present this issue. The defendant testified that he plowed across the whole tract, right through the fences, laying them out of the way; that he ran a straight line from one quarter-mile post to another, not seeking to follow the angles, which varied a little to the north and a little to the south. In reply to the question whether in running such a straight line there would be times when he would cut first on one side and then on the other of the true meander lines—the true boundary—he replied: "We would give and take." The question followed: "You would perhaps slice off one side and then take it back from the other side as you run your line?" He answered: "We went straight from one point to the other at each quarter of a mile." In view of this evidence we think it was not error for the court to refuse to submit to the jury the issue whether the defendant had removed the fence under an honest mistake, believing that it was upon what he regarded as school land. It does not appear that the defendant made any claim to the land south of the meander line, or that there was any actual difference of opinion as to where that line ran.

The suggestion is also made that the defendant was denied the right to show that he was entitled to remove the fence because it interfered with his ingress and egress to the land on which he claimed to be a settler. The evidence already quoted seems to indicate that such an issue was not presented.

It is difficult to resist the conclusion that upon his own testimony the defendant was guilty of a violation of the statute, if, as the jury must have found, he threw down the fence which stood upon the land of the complaining witness—the title to which was not in dispute. There is a difference of judicial opinion as to whether even an honest mistake is a ground of defense to a prosecution under a statute which makes certain acts an offense, without requiring the existence of any specific motive. (38 Cyc. 1179.) The offense here charged is not one which necessarily involves moral turpitude. The sole punishment provided is a fine of not over one hundred dollars. Doubtless an undue importance has been attached to this case by reason of feeling engendered by the controversy over the disputed tract, which does not really affect it. We do not think the circumstances require a new trial.

Complaint is also made that the trial court required the defendant to give a bond of $400 to keep the peace. The statute makes such a requirement discretionary (Crim. Code, § 242), and there is nothing to suggest an abuse of discretion in the present case.

The judgment is affirmed.